UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
In re:

                                    CHAPTER 11

TOWER AUTOMOTIVE, INC., *et al.*,

                                    Case No. 05-10578 (ALG)

                        Debtors.        (Jointly Administered)

-------------------------------------------------------x

## MEMORANDUM OF OPINION APPROVING SETTLEMENT AGREEMENTS

APPEARANCES

KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, New York 10022
       By: James H.M. Sprayregen, P.C.
           Matthew A. Cantor, Esq.


     - and –

200 East Randolph Drive
Chicago, Illinois 60601
       By: Anup Sathy, Esq.

Attorneys for Debtors and Debtors in Possession

AKIN GUMP STRAUSS HAUER & FELD LLP
Attorneys for the Official Committee of Unsecured Creditors
590 Madison Avenue
New York, New York 10022
       By: Daniel H. Golden, Esq.
          Ira S. Dizengoff, Esq.
          Ariane D. Austin, Esq.

PREVIANT, GOLDBERG, UELMEN, GRATZ, MILLER & BRUEGGEMAN, S.C.
Attorneys for the Milwaukee Unions
1555 N. RiverCenter Drive, Ste. 202
P.O. Box 12993
Milwaukee, WI 53212
       By: Marianne Goldstein Robbins, Esq.

1

JONES DAY
222 East 41st Street
New York, New York 10017
    By: Corinne Ball, Esq.
        Helena C. Huang, Esq.

- and -

77 West Wacker
Chicago, Illinois 60601
    By: Paul E. Harner, Esq.
        Mark A. Cody, Esq.

Attorneys for the Official Committee of Retired Employees

**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

      Before the Court is a motion by the Debtors to approve two settlements modifying retiree benefits pursuant to 11 U.S.C. § 1114(e)(1)(B). One settlement was reached with the Milwaukee Unions,[1] while the other settlement was reached with an Official Committee of Retired Employees (the "Retiree Committee").[2] The settlements were reached in connection with the Debtors' motion, filed on January 4, 2006, to reject collective bargaining agreements pursuant to 11 U.S.C. § 1113(c) and to modify retiree benefits pursuant to 11 U.S.C. § 1114(g) (the "1113/1114 Motion"). After extensive discovery and briefing, the 1113/1114 Motion came before the Court for a five-day trial commencing on February 27, 2006. The settlement with the Milwaukee Unions (the "Milwaukee Settlement") was announced in open court at the outset of the trial and the

---

[1] The Milwaukee Unions are defined as Smith Steel Workers D.A.L.U. 19806, AFL-CIO; International Association of Machinists and Aerospace Workers District 10; Technical Engineers Association; International Brotherhood of Electrical Workers Local 663; Service Employees International Union Local 1; Steamfitters Union, Local 601; and Chicago Regional Council of Carpenters. The Milwaukee plants have closed and the issues with regard to these unions principally relate to retiree benefits.

[2] The Retiree Committee represents the interests of Tower retirees and their eligible dependents who are not represented by a labor organization and who retired on or prior to December 31, 2005. The formation of a Retiree Committee was authorized by Court order dated December 14, 2005, and the Committee was appointed by the Office of the United States Trustee.

2

Milwaukee Unions did not participate in the trial. The Retiree Committee actively participated in the trial and reached a settlement with the Debtors before a decision on the 1113/1114 Motion was rendered by the Court (the "Retiree Settlement" and collectively with the Milwaukee Settlement, the "Settlements").[3] The Official Committee of Unsecured Creditors (the "Creditors Committee") participated fully in the briefing and trial and in subsequent conferences.

By motion dated April 5, 2006, the Debtors moved for approval of the Settlements (the "Settlement Approval Motion"). In brief, the Settlements provide that (i) VEBA trusts will be established to provide future benefits for the retirees represented by the Milwaukee Unions and the Retiree Committee, respectively; (ii) cash payments will be made to start up the trusts; and (iii) the trusts will principally be funded by unsecured claims that are designed to compromise and liquidate the future benefits that would have otherwise been received by the retirees. In addition, since it is not known at this point in the cases what an unsecured claim will be worth, the Milwaukee Unions and the Retiree Committee each receive a guaranteed minimum recovery, which, in the case of the Milwaukee Unions, is increased in the event certain bondholders, who potentially represent a class of general unsecured creditors, receive a recovery of more than 85% on their claims. The Settlements also resolve a host of complicated grievance, NLRB, arbitration and litigation proceedings between the Debtors and the Milwaukee Unions. The Debtors, in turn, receive what they have consistently represented they most need – relief from burdensome legacy costs that would otherwise be a cash drain on their treasuries for decades. The cash impact of the Settlements is immediate. Among other

---

[3] The motions pursuant to 11 U.S.C. § 1113(c) are still pending.

things, upon approval of the Milwaukee and Retiree Settlements, the Debtors will no longer be obligated to pay approximately $20 million at the end of this year.[4]

The Creditors Committee was the only party to object to the approval of the Settlements and objected to the Settlements on three grounds: (i) the Settlements violate the Bankruptcy Code because they guarantee a level of recovery for certain creditors, while other allegedly similarly situated creditors do not, as of yet, have any assurance as to their recovery; (ii) the Settlements comprise a *sub rosa* plan of reorganization; and (iii) the Settlements do not satisfy Fed. R. Bankr. P. 9019.  The Settlement Approval Motion came on for a hearing on April 26, 2006, and the Court took the testimony of Jeffrey Kersten, the Debtors' senior vice president for strategy and business development, in support thereof.  For the reasons stated below, the Settlements are approved.

## DISCUSSION

**I.  The Statute**

11 U.S.C. § 1114(e)(1) provides:

Notwithstanding any other provision of this title, the debtor in possession, or the trustee if one has been appointed under the provisions of this chapter (hereinafter in this section "trustee" shall include a debtor in possession), shall timely pay and shall not modify any retiree benefits, except that –

(A) the court, on motion of the trustee or authorized representative, and after notice and a hearing, may order modification of such payments, pursuant to the provisions of subsections (g) and (h) of this section; or

(B) the trustee and the authorized representative of the recipients of those benefits may agree to modification of such payments,

after which such benefits as modified shall continue to be paid by the trustee.

---

[4] Section 1114 requires that retiree benefit payments be continued during the course of a Chapter 11 case unless a court order is obtained or unless there is an agreement otherwise with the authorized representative of the retirees.  11 U.S.C. § 1114(e)(1).

4

Section 1114 was added to the Bankruptcy Code by the Retiree Benefits Bankruptcy Protection Act of 1988. It provides for appointment of a committee of retired employees to serve as the authorized representative of those persons receiving retiree benefits not covered by a collective bargaining agreement. See 11 U.S.C. § 1114(d). Patterned after § 1113, it then both protects and sets out a procedure for the modification of retiree benefits, providing for modification of retiree benefits only if the court finds that

> (i) prior to the hearing, the trustee has made a proposal to the authorized representative of the retirees
>> (a) the proposal is based on the most complete and reliable information available at the time of such proposal;
>> (b) the proposal provides for the modifications in the retiree benefits that are necessary to permit the reorganization of the debtor; and
>> (c) the proposal assures that all creditors, the debtor and the affected parties are treated fairly and equitably;
>
> (ii) the trustee has provided the representative of the retirees with relevant information as is necessary to evaluate the proposal;
> (iii) the trustee has met, at reasonable times, with the authorized representative of the retirees to confer in good faith while attempting to reach mutually satisfactory modifications of the retiree benefits
>> (a) these meetings must take place in the period between the making of the proposal and the date of the hearing;
>
> (iv) the authorized representative of the retirees has refused to accept such proposal without good cause; and
> (v) the proposed modification is necessary to permit the reorganization of the debtor, assures that all creditors, the debtor and all of the affected parties are treated fairly and equitably, and is clearly favored by the balance of the equities.

11 U.S.C. §§ 1114(f)-(g).[5]

## II. The Settlements do not unfairly discriminate in favor of the retirees and against the general unsecured creditors

The Creditors Committee's first objection is that the Settlements prefer retirees by giving them a "guaranteed recovery" while the remaining general, "similarly situated"

---

[5] The foregoing is a description rather than a quote of the relevant provisions of § 1114.

5

unsecured creditors do not know how they will be treated under a plan of reorganization. This refrain is not a viable objection to most settlements during the course of a bankruptcy case and prior to confirmation of a plan. Debtors routinely settle matters during a case, as "compromises are a normal part of the process of reorganization." *Barry v. Smith (In re New York, New Haven and Hartford Railroad Co.)*, 632 F.2d 955, 959 (2d Cir. 1980). Even the Creditors Committee conceded, at the hearing, that if the Debtors had paid only cash in the Settlements, it would not have objected on a "guaranteed recovery" theory. The form of a settlement, however, is only one factor to be considered in connection with a ruling on the reasonableness of a settlement. In this case, the Debtors have no excess cash and a principal purpose of the 1113/1114 Motion was to achieve cash savings now and in the future. The Creditors Committee has never satisfactorily explained why, under the circumstances, the Debtors could not provide retirees with a guaranteed proof of claim amount and use currency other than cash to effect the Settlements.

In any event, the Creditors Committee ignores the plain language of § 1114 in asserting that general unsecured creditors are situated similarly to retirees. Section 1114 requires a good faith course of negotiation before benefits can be modified, and it allows a debtor to modify retiree benefits without the agreement of the authorized representative only if it can show (among other things) that (i) the authorized representative refused to accept a proposal without good cause, and (ii) "such modification is necessary to permit the reorganization of the debtor and assures that all creditors, the debtor, and all of the affected parties are treated fairly and equitably, and is clearly favored by the balance of the equities." See 11 U.S.C. § 1114(g)(3). The statute requires the parties to attempt to

6

come to an agreement on terms.  General unsecured creditors have no such specific protection in Chapter 11, either with respect to the process of bargaining or the substantive provisions of a plan.  Despite the importance of good faith negotiation in connection with the Chapter 11 process, the Bankruptcy Code gives a debtor broad authority to alter the rights of unsecured creditors in a plan of reorganization.  11 U.S.C. §§ 1123, 1129.  By contrast, unless the Court approves a modification in accordance with § 1114 standards and procedures, a plan must provide for the continuation of retiree benefits "for the duration of the period the debtor has obligated itself to provide such benefits" at an unmodified level.  11 U.S.C. § 1129(a)(13).

The Committee's alternative contention is that if benefits are modified under § 1114, retirees are entitled to receive only general unsecured claims that must be treated in the same fashion as other general unsecured claims in a subsequent plan.  This argument suggests that the only permissible outcome in a § 1114 proceeding is either a victory for the retirees or the complete elimination of all retiree benefits, either by trial or settlement, in return for a general unsecured claim.  As discussed above, however, § 1114 requires a course of negotiations "to reach mutually satisfactory modifications of such retiree benefits," if possible.  Agreement is one of the two ways retiree benefits can be modified under § 1114.  *Hourly Employees/Retirees of Debtor v. Erie Forge & Steel, Inc.*, 2004 WL 385023 (W.D. Pa. Feb. 2, 2004), *aff'd on other grounds*, 418 F.3d 270 (3d Cir. 2005).  The possibility of an agreement would be greatly impeded if the only legally permissible offer the Debtors could make was to give retirees a general unsecured claim at the end of the day.  No court has so held, and cases have approved settlements in § 1114 proceedings that provide retirees with consideration in a form that does not

7

exclusively comprise an unsecured claim. See, e.g., *In re GF Corp.*, 120 B.R. 421 (Bankr. N.D. Ohio 1990); *Hourly Employee/Retirees of Debtor*, 2004 WL 385023, at *4.

The fact that Congress intended § 1114 to allow a modification of benefits that includes recovery in a form other than an unsecured claim is confirmed by the following passage from the legislative history of § 1114, providing an example of how the statute would work:

> If the present value of the health insurance benefits of retirees is $100 million at the time the petition is filed and the court orders a modification reducing benefit payments by $25 million, the retirees have an unsecured claim for the full $25 million. If every unsecured creditor receives 50 cents on every dollar, retirees would receive $12.5 million in addition to the continuation of 75 percent of their original health benefit.

S. Rep. No. 119, 100th Cong., 1st Sess. 1, 6 n.2, reprinted in 1988 U.S. Code Cong. & Admin. News 683, 688 n.2. The hypothetical illustrates one outcome where retiree benefits are not treated like unsecured claims. The Committee cites *In re Ionosphere Clubs, Inc.*, 134 B.R. 515 (Bankr. S.D.N.Y. 1991), for the proposition that an order providing for modification of retiree benefits gives rise only to a general unsecured claim. However, the issue there was whether the retirees would have a priority administrative claim if benefits were modified by court order (not agreement), and the *Ionosphere* court relied on the passage from the Legislative History, quoted above, as confirmation of the fact that modifications required by court order do not automatically create administrative claims. 134 B.R. at 526.

### III. The Settlements do not constitute a *sub rosa* plan

The Creditors Committee's second argument is that the Settlements constitute a *sub rosa* plan of reorganization because they dictate terms with which the Debtors will have to comply in the future. In extreme circumstances, courts have refused to approve

8

settlements or other transactions by a debtor, such as the sale of all or substantially all assets, without the benefit of a confirmed plan or court-approved disclosure statement and without an adequate business justification. See *In re Decora Indus., Inc.*, 2002 WL 32332749, at *8 (D. Del. May 20, 2002); *Official Comm. of Unsecured Creditors v. Raytech Corp. (In re Raytech Corp.)*, 190 B.R. 149, 151 (Bankr. D. Conn. 1995); see also, *Comm. of Equity Sec. Holders v. Lionel Corp.(In re Lionel Corp.)*, 722 F.2d 1063 (2d Cir. 1983) (sale of most important asset without articulated business justification); *Institutional Creditors of Continental Air Lines, Inc. v. Continental Air Lines, Inc. (In re Continental Air Lines, Inc.)*, 780 F.2d 1223 (5th Cir. 1986) (new lease transactions after bankruptcy). Such settlements encroached "on a right afforded creditors or equity holders in the chapter 11 plan process." *In re Crowthers McCall Pattern, Inc.*, 114 B.R. 877, 885 (Bankr. S.D.N.Y. 1990).

On the other hand, courts have approved even large and important settlements prior to confirmation of a plan, notwithstanding a "*sub rosa* plan" objection, where the settlements did not dispose of all of the debtor's assets, restrict creditors' rights to vote as they deemed fit on a plan of reorganization, or dictate the terms of a plan of reorganization. See *Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop., Inc. (In re Cajun Elec. Power Coop., Inc.)*, 119 F.3d 349, 354 (5th Cir. 1997); *In re Alleghency Int'l, Inc.*, 117 B.R. 171 (W.D. Pa. 1990); *In re Dow Corning Corp.*, 192 B.R. 415 (Bankr. E.D. Mich. 1996). As the Court stated in the *Cajun Electric Power* case, rejecting a *sub rosa* plan argument, the settlement there did "not dispose of all claims against [the debtor], nor does it restrict creditors' rights to vote as they deem fit on a

9

proposed reorganization plan [nor does it] dispose of virtually all of [the debtor's] assets ... ." 119 F.3d at 355.[6]

The Settlements here do not dictate any of the terms of a future plan of reorganization, do not restructure the Debtors' business or finances generally, and do not restrict any rights afforded to creditors in the chapter 11 process, such as the right to vote on a proposed plan of reorganization in the manner they see fit. The Settlements merely provide additional consideration to retirees in exchange for modifying their benefits. Although this consideration may be different from the consideration to be given general unsecured creditors, the difference (as discussed above) is expressly permitted under § 1114. Moreover, § 1114(f) requires that a debtor seeking to modify retiree benefits make "a proposal to the authorized representative of the retirees, based on the most complete and reliable information available at the time of such proposal ... ." No party argued that it was unfair for the retirees to have to negotiate before their representatives knew the treatment of other general unsecured creditors in a plan of reorganization. There similarly is no basis for the Creditors Committee to argue that a settlement cannot now be approved that fixes the Debtors' obligation to the retirees.

**IV. The Settlements meet the standards of Bankruptcy Rule 9019**

The Creditors Committee's third argument is that the Settlements do not meet the standards of Bankruptcy Rule 9019, which provides, in relevant part, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). A court assesses a settlement by determining

---

[6] The Court also found that the transaction authorized in that case did not dispose of one of the debtor's crown jewels but rid it of a white elephant. It bears emphasizing that the Settlements here resolve an extremely difficult issue that the Debtors have consistently contended would, if not resolved in a satisfactory manner, adversely affect their ability to reorganize.

10

whether it "fall[s] below the lowest point in the range of reasonableness." *Anaconda-Ericsson, Inc. v. Hessen (In re Teltronics Servs., Inc.)*, 762 F.2d 185, 189 (2d Cir. 1985). In making this assessment, there is a general presumption in favor of settlements, *Fogel v. Zell*, 221 F.3d 955, 960 (7th Cir. 2000), as "compromises are favored in bankruptcy." *Martin v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996), quoting 9 Collier, *Bankruptcy* ¶ 9019.03[1] (15th ed. 1993); see also *Fishell v. Soltow (In re Fishell)*, 1995 WL 66622, at *2 (6th Cir. Feb. 16, 1995).

Although the Creditors Committee invoked the Bankruptcy Rule 9019 standards, it adduced nothing of substance to support the contention that the Settlements are unreasonable. Indeed, the Creditors Committee conceded, at the hearing, that its 9019 objection rested on the proposition, which the Court has rejected, that the Debtors as a matter of law cannot give the Milwaukee Unions and the Retiree Committee more than a general, unsecured claim if the retiree benefits are modified. Under these circumstances, the Court summarily rejects the Committee's contentions under Bankruptcy Rule 9019. Moreover, having heard five days of testimony on the 1113/1114 Motions, the Court has no reason not to endorse a settlement that satisfies the Debtors' principal goal, saving cash, while affording significant protection for the rights that Congress required be preserved for the retirees. The litigation posed significant risks for both sides. Despite the Committee's contentions, it is in the interests of all parties to go forward with these Settlements so that the Debtors and the Committee can proceed to negotiate a plan and an end to these cases.

11

The Debtors are directed to submit orders approving the Settlements.

Dated: New York, New York
May 19, 2006

*/s/ Allan L. Gropper*
UNITED STATES BANKRUPTCY JUDGE