UNITED STATES BANKRUPTCY COURT　　　　　**NOT FOR PUBLICATION**
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
In re:　　　　　　　　　　　　　　　　　　　　Chapter 11

TOWER AUTOMOTIVE, INC., *et al*.,　　　　　Case No. 05-10578 (ALG)

　　　　　　　　　　　　　　Debtors.　　　　　Jointly Administered

-------------------------------------------------------------------x

**MEMORANDUM OF OPINION**

A P P E A R A N C E S:

TOGUT, SEGAL & SEGAL, LLP
Counsel for the Debtors
　By:　Frank A. Oswald, Esq.
　　　　Jonathan Hook, Esq.
One Penn Plaza
New York, New York 10119

KRUKOWSKI & COSTELLO, S.C.
Counsel for Rodney A. Garfield
　By:　David F. Loeffler, Esq.
7111 West Edgerton Avenue
Milwaukee, Wisconsin 53228

AKIN, GUMP, STRAUSS, HAUER & FELD, LLP
Counsel for the Official Committee of Unsecured Creditors
　By:　Stanley B. Tarr, Esq.
590 Madison Avenue
New York, New York 10022


**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**


　　　　Before the Court is a request by Rodney A. Garfield ("Garfield") for treatment of

his claim as an administrative expense of the above-captioned debtors and debtors-in-

1

possession (collectively, the "Debtors").[1] The Debtors do not dispute that $40,000 of the claim is entitled to administrative status. The dispute involves the remaining $194,500.

## Facts

Garfield was employed as a manager at the Debtors' manufacturing facility in Milwaukee, Wisconsin. His job title was "Leader Milwaukee Business Unit, Lower Vehicle Structures Product Group."[2] Prior to the Debtors' chapter 11 filing, Garfield and the Debtors entered into a Retention Agreement, dated February 26, 2003 (the "Retention Agreement"). The Retention Agreement provided, among other things, that if Garfield were terminated for any reason other than for cause he would receive (i) thirty-nine weeks of salary continuation;[3] and (ii) a lump-sum payment in the amount of six months of his salary rate at the time of termination (together, the "Prepetition Contract Amount").

On February 2, 2005, the Debtors filed for chapter 11 protection. Garfield and the Debtors subsequently entered into a "Transition Bonus Letter," dated May 2, 2005 (the "Transition Bonus Letter"), pursuant to which Garfield would receive (a) $20,000 as a retention bonus (the "Retention Bonus") if he remained with the Debtors until the earlier of (i) the Debtors' emergence from chapter 11, (ii) the sale of the Milwaukee facility, or (iii) the date Garfield was notified his services were no longer needed; and (b) a payment in the amount of $20,000 if production and delivery at the facility met certain standards (the "Productivity Bonus"). The Transition Bonus Letter did not refer to or directly acknowledge the 2003 Retention Agreement. It contained, however, two sentences

---

[1] The parties submitted letters outlining their positions, and each requested a summary judgment conference pursuant to Local Bankruptcy Rule 7056-1(a). A conference was held, and it was agreed that the Court would decide the matter on the written record before it.

[2] This division was involved in the production of frames for automobiles and the operation of presses used in the manufacturing of automotive parts.

[3] Garfield was eligible for the salary continuation if terminated on or prior to December 31, 2005. As discussed below, Garfield was in fact terminated shortly before that date.

2

relevant to the instant dispute: "We are willing to offer you the bonus incentive over and above any severance you may be offered under Tower's guidelines for position elimination situations, should your employment with us end under that circumstance."; and: "This offer does not in any way change the fundamental nature of your employment with Tower, and all other terms and conditions of that employment remain the same."

Garfield continued his employment with the Debtors until his termination on November 1, 2005.[4] It is alleged that at this time the Debtors offered Garfield only ten weeks at his base salary as a total severance payment, and he claims that this breached the provisions of the Transition Bonus Letter and his prepetition Retention Agreement.

Garfield filed a first priority administrative claim against the Debtors in the amount of $234,500 (the "Administrative Claim").[5] The Administrative Claim consists of: (1) the postpetition Retention Bonus in the amount of $20,000; (2) the postpetition Productivity Bonus in the amount of $20,000; and (3) the Prepetition Contract Amount in the aggregate sum of $194,500.[6] The Debtors purport to reserve their rights with respect to any defenses or objections to the Retention Bonus or Productivity Bonus portions of the alleged Administrative Claim. However, since they have failed to offer any argument against administrative status for these amounts, Garfield is entitled to a $40,000 administrative claim for them on this record. The only issue before the Court is the administrative priority of the Prepetition Contract Amount.

---

[4] No allegation is made that Garfield was terminated for cause.
[5] Garfield filed claim number 6532, which claim was subsequently amended by claim number 6589.
[6] The Prepetition Contract Amount is computed in the Administrative Claim as including $117,000 for the salary continuation component and $77,500 for the lump sum payment.

3

**The Positions of the Parties**

Garfield's position rests on one contention. He interprets the language of the Transition Bonus Letter, stating that the terms and conditions of employment remain the same, to mean that the terms of the Retention Agreement were incorporated into the new agreement contained in the Transition Bonus Letter. Garfield argues that the Transition Bonus Letter is a postpetition contract entered into by the Debtors in the ordinary course of business, and therefore did not require Court approval under §§ 363(b) or 365(a) of the Bankruptcy Code. To support the argument that payment was in the ordinary course, Garfield notes that it is standard to offer severance to key operational employees and that there was no reason to incur the costs of obtaining approval from the Court for this sort of transaction. (Hrg. Tr. Feb. 1, 2007, 12:15-25). Counsel to Garfield also focuses on the payment being an obligation that is likely to enhance the size of the estate. Garfield, it is argued, accepted the new agreement, and performed until his termination on November 1, 2005.

The Debtors counter that the language of the Transition Bonus Letter merely acknowledges that there may be a prepetition agreement in existence and does not modify that agreement, but instead offers separate transition payments. The Debtors allege that the transition bonus can accomplish all that Garfield refers to without incorporating prepetition agreements entered into under entirely different circumstances. They further note that the Debtors have not assumed the prepetition agreement, which would have required a motion under § 365 of the Bankruptcy Code and a court order after notice and a hearing.

4

**Discussion**

Section 507(a)(1) of the Bankruptcy Code grants first priority to administrative expenses allowed under § 503(b) of the Bankruptcy Code. Under § 503(b)(1)(A), administrative expenses are defined as "the actual, necessary costs and expenses of preserving the estate including . . . wages, salaries, and commissions for services rendered after the commencement of the case." An administrative expense must arise from a transaction between a third party and the trustee or the debtor in possession, and it is necessary that the consideration supporting such payment be supplied to and be beneficial to the debtor in possession. *Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 101 (2d Cir. 1986). "Because the presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among his creditors, statutory priorities are narrowly construed." *Id.* at 100. The burden of proving administrative priority falls upon the litigant seeking administrative status. *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 482, 489 (Bankr. S.D.N.Y. 1991).

Garfield gains no support for his administrative claim from the words of the Transition Bonus Letter. The letter does not refer to or expressly or impliedly incorporate his prepetition Retention Agreement, and it certainly does not constitute a novation of that agreement. *See Holland v. Fahnestock & Co.*, 210 F.R.D. 487, 498 (S.D.N.Y. 2002) ("The key element of a novation is that the parties unequivocally intended to extinguish and discharge the prior obligation."). It says the exact opposite, that the new agreement "does not in any way change the fundamental nature of your employment with Tower, and all other terms and conditions of that employment remain the same." That means that whatever rights Garfield had under that agreement were

5

neither enhanced nor diminished.  The language in the Transition Bonus Agreement is unambiguous and did not purport to assume the Retention Agreement or grant it post-petition or administrative status.

Nor could the Debtors have assumed the prepetition Retention Agreement without notice and a hearing under § 365 of the Bankruptcy Code.  It is not uncommon for litigants to assert that a debtor's postpetition acts constitute implied assumption of a contract.  Courts have not favored this concept, as it would burden an estate with administrative claims that have never been brought to light and subjected to creditor scrutiny and judicial approval.  *See Mason v. Official Committee of Unsecured Creditors (In re FBI Distribution Corp.)*, 330 F.3d 36, 45-6 (1st Cir. 2003).

Moreover, the Transition Bonus Letter is inconsistent with Garfield's prepetition Retention Agreement.  It offers him $40,000 in bonuses under certain circumstances and contemplates the possibility that Garfield will be offered a postpetition severance package if he is later terminated (the $40,000 was expressly said to be "over and above any severance you may be offered under Tower's guidelines for position elimination situations…").  The record indicates that Garfield was offered such additional severance and turned it down, asking for more. Whether the prior amount is still available is not known.  In any event, it cannot be argued that the Debtors intended to give Garfield $194,500 on top of $40,000 and on top of "severance you may be offered under Tower's guidelines for position elimination situations . . . ."

Garfield has raised no other issues relating to administrative status for his claims under his prepetition Retention Agreement.  The claim he has made for an additional $194,500 based on alleged assumption or incorporation of his Retention Agreement is

6

denied.  On this record, the Court declines to reach any issues that have not been raised, such as whether payments under the Retention Agreement could be construed to be "a new benefit earned at termination for employees terminated without cause" or an acceleration of  "the payment of benefits the employees have already accrued over the course of their employment."  *See Supplee v. Bethlehem Steel Corp. (In re Bethlehem Steel Corp.)*, 479 F.3d 167, 175 (2d Cir. 2007).

## **Conclusion**

For the reasons stated above, Garfield's request for an administrative claim is granted only in the amount of $40,000.  Debtors shall settle an order on five days' notice.

Dated: New York, New York
       June 29, 2007

                                                          */s/ Allan L. Gropper*_____
                                                          UNITED STATES BANKRUPTCY JUDGE